

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00707-CV

Stephen **WELLINGTON**,
Appellant

v.

Carrie Lynn **WELLINGTON**,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 14-1769-CV
Honorable Robin V. Dwyer, Judge Presiding

Opinion by:   Luz Elena D. Chapa, Justice

Sitting:   Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  January 24, 2018

AFFIRMED

Stephen Wellington appeals the trial court's denial of his motion to declare a domestic relations order void, arguing the trial court lacked jurisdiction to sign the order, the order was signed in violation of his right to due process, and the order impermissibly modified the divorce decree.  We hold the domestic relations order is not void because the trial court rendered the order when it signed the divorce decree and its terms were wholly encompassed in the decree.

**BACKGROUND**

In the underlying divorce proceeding, Stephen and his former wife, Carrie, reached a mediated settlement agreement. At a hearing held November 13, 2014, the trial court, the Honorable Linda Z. Jones, orally granted a divorce, but did not sign an order. The parties subsequently entered into an Agreement Incident to Divorce ("the AID") that contains the parties' agreements dividing the marital estate. The agreement was signed by Stephen on January 20, 2015, signed by Carrie on February 11, 2015, and signed by both parties' attorneys. Among other things, the AID divides Stephen's military retirement benefits "as more particularly specified in the domestic relations order signed in conjunction with this agreement and incorporated verbatim in it by reference." The Domestic Relations Order ("DRO") ultimately signed by the trial court is signed and "approved and consented to as to both form and substance" by both Stephen and Carrie and is signed by both parties' attorneys, approving it as to form.

On April 1, 2015, the Honorable Robin V. Dwyer signed a Final Decree of Divorce ("the Decree"). With respect to the division of the marital estate, the Decree states, "IT IS ORDERED AND DECREED that the division [of] the marital estate shall be as specified in the AID incorporated by reference into this Decree." The Decree expressly approved the AID and "incorporate[d] it by reference as part of this decree as if it were recited [t]herein verbatim." Again, both Stephen and Carrie signed the Decree as "approved and consented to as to both form and substance," and counsel for both parties signed the Decree, approving it as to form. Carrie's attorney sent the DRO that had been signed by the parties to the trial court for signature, and the trial court signed it on May 8, 2015.

More than a year later, in the course of litigation regarding Stephen's payment of spousal support and after obtaining new counsel, Stephen filed a motion to declare the DRO void on the grounds that it was signed after the trial court lost plenary jurisdiction, he was not served with a

petition or motion for entry of the DRO, and because it impermissibly modified the AID and the Decree. After a hearing before Judge Dwyer, the trial court denied the motion, concluding that "the Court render[ed] the DRO by signing the Final Decree on April 1, 201[5] such that the signature on the DRO on May 8, 201[5] was a ministerial act." The court further found that the DRO signed by the court did not substantially change or add terms to the Decree. Stephen appeals the trial court's order.

## DISCUSSION

When a divorce decree does not render a DRO and the decree becomes final and unappealable, the trial court can render a valid DRO only upon the filing of a petition and service in accordance with the Texas Rules of Civil Procedure. *See* TEX. FAM. CODE ANN. §§ 9.102, 9.103 (West 2006); *Araujo v. Araujo*, 493 S.W.3d 232, 237-38 (Tex. App.—San Antonio 2016, no pet.). In this case, it is undisputed that the trial court lost plenary jurisdiction over the Decree on May 1, 2015, and that no post-decree petition requesting the trial court to render a DRO was filed or served on Stephen. Stephen's arguments in this appeal are all based on his contention that the trial court did not render a DRO before the Decree became final. He contends his right to due process was violated because he was not served with a petition to render the DRO and the trial court lacked jurisdiction to sign the DRO on May 8, 2015.

"A judgment is 'rendered' when the trial court's decision upon the matter submitted to it for resolution is officially announced either orally in open court or by memorandum filed with the clerk." *Araujo*, 493 S.W.3d at 235 (citing *Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex. 1982)). In order for judgment to be rendered, the trial court must indicate a present intent "to render a full, final, and complete judgment at the time the words are expressed." *Id.* at 236. In determining whether a judgment was rendered, "we look primarily to the words used by the court." *Id.* at 237.

Stephen initially contends the trial court erred in denying his motion to declare the DRO void because Judge Jones did not render a DRO on November 13, 2014. We agree that no DRO was rendered November 13, 2014. However, we disagree with Stephen's assertion that Judge Dwyer "stated in the order being appealed that the DRO was 'rendered orally on November 13, 2014.'" The order does not so state and Judge Dwyer did not make such a finding. The order denying Stephen's motion to declare the DRO void merely recites that "the Honorable Linda Z. Jones, rendered a judgment orally in open court on November 13, 2014." The order and the record both support that the oral judgment rendered on November 13, 2014 was an interlocutory judgment that granted a divorce, but did not divide property.[1] Contrary to Stephen's assertion, the trial court's order makes an express finding that the DRO was rendered on April 1, 2015.

Stephen next argues that the DRO was not rendered as part of the April 1, 2015 Decree because "the DRO was not even prepared on the date the Decree was signed." Stephen relies solely on Carrie's attorney's statement that she submitted the DRO for the court's signature on April 21, 2015. Stephen concludes from this statement that the DRO was not prepared before that date. However, there is no basis in the record to make this conclusion. The express language of the AID assumes the existence of the DRO, the terms of which had been agreed to by the parties, and both the AID and the DRO were incorporated by reference into the Decree rendered April 1, 2015.

The parties may have intended for the trial court to sign the DRO at the same time the Decree was signed, but the record is silent as to why that did not occur. However, the absence of

---

[1] The only evidence in this court's record of what occurred at the November 13, 2014 hearing is a docket entry that reads: "Proof (MSA) and Div. rendered grant today. They will file (sic) up w/Decree." The MSA is not in our record and the trial court in the current proceeding made no findings regarding its content or regarding what occurred at the November 13, 2014 hearing. After that hearing, the parties entered into the AID, which included a division of property and a DRO, and the parties asked the trial court to sign the final decree in accordance with their agreement. The decree recites that the terms of the AID control over the MSA to the extent there are any differences.

the court's signature on the DRO does not mean the substantive terms of the DRO were not rendered as part of the Decree. There is no dispute that the Decree rendered a final judgment dividing the marital estate. The Decree states: "IT IS ORDERED AND DECREED that the division [of] the marital estate shall be as specified in the AID incorporated by reference into this Decree." The AID, in turn, awards each of them a part of Stephen's military retirement benefits "as more particularly specified in the domestic relations order signed in conjunction with this agreement and incorporated verbatim in it by reference." The DRO was signed by both parties and their attorneys. The plain language of the Decree and the documents incorporated therein evidence a present intent to render a DRO at the time the Decree was signed. This contrasts with the facts in *Araujo*, upon which Stephen relies. In *Araujo*, the divorce decree awarded the spouse a portion of the pension benefits, generally described in the decree and "more particularly specified in the Order Dividing Railroad Retirement Benefits to be entered after this Decree." *Id.* at 234. This court held the decree indicated an intention to render a QDRO in the future and the decree therefore did not render a DRO. *Id.* at 237. We concluded the trial court lacked jurisdiction to sign the DRO after the trial court's plenary power over the decree had expired because the court's jurisdiction had not been properly invoked. *Id.* at 238.

We hold the DRO was rendered as part of the April 1, 2015 Final Decree of Divorce. Because a separate, signed DRO is required by the entity administering Stephen's retirement benefits, the previously rendered DRO was submitted to the trial court for signature. The trial court's signature on the previously rendered DRO was purely ministerial and did not require a motion, petition, or service. *See id.* at 235-36. We therefore overrule Stephen's first two issues.

In his third issue, Stephen argues the DRO substantively altered the Decree in violation of section 9.007(b) of the Family Code by addressing an issue that was not specifically addressed in the AID or the Decree. The DRO contains provisions relating to Stephen's Survivor Benefit Plan

that were not expressly mentioned in the AID and therefore, according to Stephen, are not part of the property division in the Decree.  We again disagree.  The terms of the DRO were incorporated in full by reference into the AID and the Decree, and those terms were part of the Decree that was rendered April 1, 2015.  The trial court's signing of the DRO on May 8 did not alter any of those terms.  We overrule the issue, and we affirm the trial court's order denying Stephen's motion to declare the Domestic Relations Order signed May 8, 2015 void.

Luz Elena D. Chapa, Justice